Beverly J. OTTO, Individually and on behalf of all others similarly situated, et al., Plaintiffs,

v.

VARIABLE ANNUITY LIFE INSURANCE COMPANY, et al., Defendants.

No. 82 C 4762.

United States District Court, N.D. Illinois, E.D.

Nov. 8, 1991.

Amending Opinion and Order Dec. 18, 1991.

Opinion and Order on Reconsideration Dec. 4, 1992.

Craig Edgar Anderson, James A. Brandvik, Charles James Corrigan, Allen D. Choka, Jacobson, Brandvik & Anderson, Herbert I. Rothbart, Chicago, IL, for plaintiff.

Randall L. Mitchell, Schuyler, Roche & Zwirner, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

[Nov. 8, 1991]

ASPEN, District Judge:

The named plaintiff, Beverly Otto, brings this class action against Variable Annuity Life Insurance Company and other affiliated companies (collectively referred to as "VALIC"), seeking to recover for alleged violations of, among other things, § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. In light of the recent Supreme Court decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), VALIC renews its motion for summary judgment on the ground that Otto's claims under the 1934 Act are time-barred. In the event that this court grants VALIC's motion, class members Frank DeBoer and Dwain Dedrich have petitioned for leave to intervene as named plaintiffs. For the reasons as set forth below, VALIC's motion for summary judgment is granted in part and denied in part.[1] DeBoer and Dedrich's petition for intervention in the class action as a matter of right is denied.

### I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

### II. Background

Beverly Otto represents a class of Illinois investors who participated in VALIC's fixed

---

1. As Otto's entire claim under the 1934 Act is not time-barred, we deny VALIC's motion to dismiss Counts IV (common-law fraud) and V (breach of contract) for lack of jurisdiction.

annuity plan between October 17, 1975 (the date of Otto's initial contribution) and August 2, 1982 (the date Otto filed this lawsuit). Otto claims that VALIC failed to disclose the method by which interest was calculated under the fixed annuity plan—specifically, that it used the "banding" or "new money" method of calculating interest, as opposed to, for instance, the "portfolio" method. Under the "banding" method, the current rate of interest is paid only on deposits made during the current period. Prior contributions continue to earn the rate of interest declared during the period in which these contributions were made. As an alternative, under the "portfolio" method, the same rate of interest is paid on all contributions.

Additionally, Otto asserts that VALIC failed to disclose the method by which a participant in the fixed annuity could potentially earn a higher rate of interest. Otto contends that a "transfer practice" enabled fixed annuity participants to transfer funds to a variable annuity for 120 days, and then transfer the funds back to the fixed annuity. According to Otto, this nondisclosure constitutes a violation of the Securities Act of 1934, breach of contract and common-law fraud.

On January 19, 1990, we denied VALIC's second motion for summary judgment based in part on then-prevailing Seventh Circuit precedent that the three-year limitations period imposed by Ill.Rev.Stat. ch. 121½, ¶ 137.-13D (1977) applied to § 10(b) cases brought in a federal forum in Illinois. *Otto v. Variable Annuity Life Ins. Co.*, 730 F.Supp. 145, 148 (N.D.Ill.1990). Further, we indicated that the doctrine of equitable tolling potentially delayed the point at which the limitations period began to run. *Id.* Once again, VALIC moves this court to enter summary judgment on the ground that Otto's claims are time-barred. In light of the recent Supreme Court decision in *Lampf*, reconsideration of VALIC's motion is appropriate.

### III. Discussion

#### A. *VALIC's Motion for Summary Judgment*

■ In *Lampf*, the Supreme Court held that actions brought pursuant to § 10(b) of the 1934 Act and Rule 10b-5 are governed by a 1-and-3-year limitations period. *Lampf*, — U.S. at —, 111 S.Ct. at 2782. Thus, a plaintiff must file suit within one year after the discovery of the facts constituting the violation, and, in any case, within three years after such violation. *Id.* Moreover, the Supreme Court explicitly refused to apply the doctrine of equitable tolling, concluding that the doctrine was "fundamentally inconsistent with the 1-and-3-year structure." *Id.*

At the onset, we observe that Otto does not contest the retroactive application of *Lampf* to the present case. Significantly, the Court in *Lampf* applied the 1-and-3-year limitation retroactively to the litigation in which the new rule was announced, despite the fact that the plaintiff had justifiably relied on Oregon's 2-year statute under state-borrowing principles. *Lampf* at —, 111 S.Ct. at 2782-83. Although this retroactive application was undertaken without any discussion of the retroactivity issue, and was effected over a dissenting opinion that noted that the Court had previously declined to apply new statute of limitations rules to the litigation in which the new rule was announced, *id.* at — – —, at 2785-87 (O'Conner, J., dissenting), subsequent Supreme Court pronouncements make clear that *Lampf* must be given retroactive application. On the same day it issued the *Lampf* decision, the Court recognized the fallacy in a refusal to apply retroactively to all civil cases pending on direct review a rule of federal law previously applied retroactively in the case announcing the rule. *See James B. Beam Distilling Co. v. Georgia*, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). Moreover, the Court in *Northwest Savings Bank, PaSA v. Welch*, — U.S. —, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991), specifically confirmed the retroactive application of *Lampf* to all pending actions. In that case, the plaintiffs filed suit under § 10(b), alleging material misrepresentations and omissions in connection with purchases of interests in an oil and gas drilling venture. The district court dismissed the action, applying the 1-and-3-year federal limitations rule. *Welch v. Cadre Capital*, 735 F.Supp. 467 (D.Conn. 1989). The Second Circuit reversed on appeal, holding that its decision in *Ceres Partners v. Gel Associates*, 918 F.2d 349 (2d

Cir.1990) (adopting the 1–and–3–year federal limitations rule), should not be applied retroactively. *Welch v. Cadre Capital,* 923 F.2d 989, 995 (2d Cir.1991). However, on June 28, 1991, the Supreme Court vacated the judgment of the Second Circuit and remanded the case for further consideration in light of *James B. Beam* and *Lampf. Northwest Savings,* —— U.S. at ——, 111 S.Ct. at 2882.

■ Seizing upon the three-year limitations period adopted in *Lampf,* VALIC argues that all claimed violations based on purchases that occurred prior to August 2, 1979 are barred. We agree. However, a question remains as to whether Otto's investment activity gave rise to a violation after August 2, 1979. VALIC, citing *Klein v. Goetzmann,* 770 F.Supp. 78 (N.D.N.Y.1991), contends that *all* purchases, whether or not effected more than three years before the suit was filed, are barred because they were allegedly induced by misrepresentations made before August 2, 1979. In *Klein,* the court concluded that the claims of class members who purchased stock not more than three years before the filing of the suit were nonetheless time-barred. *Id.* at 85 n. 8. Although not explicit, the court apparently reasoned that the fraudulent activity, and not the subsequent purchases, constitutes the date of the violation for statute of limitations purposes. This rationale finds roots in *Lampf:* "Litigation instituted pursuant to § 10(b) and Rule 10b–5 therefore must be commenced . . . within three years after such violation. As there is no dispute that the earliest of plaintiff-respondents' complaints was filed more than three years after petitioner's alleged *misrepresentations,* plaintiff-respondents' claims were untimely." *Lampf,* —— U.S. at ——, 111 S.Ct. at 2782.

■ Otto, however, unlike the plaintiff in *Klein* or in *Lampf,* is not alleging a series of discrete misrepresentations which can be easily fixed in time.[2] Rather, Otto's claim is premised on continuing omissions of fact— the method by which interest was calculated and the method by which a participant in the fixed annuity could potentially earn a higher rate of interest. It is axiomatic that pinpointing the time of an omission is an entirely different task than measuring the occurrence of a material misrepresentation. Such an assessment can only be made with reference to the purchase or sale that the omission induced.[3]

In the present case, Otto initially purchased interests in VALIC's fixed annuity on October 17, 1975. Despite the fact that Otto's account became dormant after April 1, 1978 (*i.e.,* she did not continue to contribute to the annuity), she continued to earn, and was credited with, interest on her prior investments in the annuity. According to VALIC's expert, Professor Kellison, any interest earned by the participant in excess of the guaranteed 4% was treated as new money and was reinvested into a new band. Kellison Dep. at 17. Otto was under no legal obligation to retain in VALIC's annuity plan either the initial contributions or any of the interest subsequently earned and reinvested. As such, each reinvestment of the interest earned constituted an independent investment decision, or more specifically, a "purchase" for purposes of § 10(b). *See Goodman v. Epstein,* 582 F.2d 388, 413 (7th Cir. 1978) (Under the circumstances of a continuing relationship, the crucial fact in determining when the "purchase" of a security occurs is "whether an investment decision remains to be made by the party from whom disclosure is withheld, and not upon when the agreement to purchase . . . was executed."), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). To the extent that the omission is material, each and every invest-

---

**2.** In *Lampf,* for instance, the complaint alleged that plaintiff-respondents were induced to invest in the various limited partnerships by misrepresentations in the offering memoranda. *Lampf,* —— U.S. at ——, 111 S.Ct. at 2776.

**3.** Even within the context of a discrete misrepresentation, the confined focus upon the timing of the misrepresentation appears discordant with the Court's holding in *Lampf* that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 . . . be commenced within . . . three years after [the] *violation."* *Lampf* at ——, 111 S.Ct. at 2782 (emphasis supplied). Indeed, a violation of § 10(b) and Rule 10b–5 is comprised not only of a misrepresentation or omission of material fact, but also includes "the purchase or sale of any security." 15 U.S.C. § 78j; 17 C.F.R. § 240.-10b–5 (1990).

ment decision made after August 2, 1979, by Otto and the other class members would constitute a separate violation under § 10(b) and Rule 10b–5. *See Peoria Union Stock Yards Co. Retirement Plan v. Penn Mut. Life Ins. Co.,* 698 F.2d 320, 326 (7th Cir.1983) (applying Illinois' 3–year statute of limitations, and concluding that a § 10(b) claim based on periodic contributions to the annuity under a continuing material omission is not barred even though the original investment was more than three years before the filing of the suit). Accordingly, only those claims by class members who purchased and subsequently withdrew their interest in VALIC's fixed annuity prior to August 2, 1979, are barred by the three-year limitations period adopted by *Lampf.*

With regard to the second limitations period employed in *Lampf,* VALIC contends that Otto failed to file suit within one year after the discovery of the facts constituting the violation. We note that full knowledge of the facts constituting the violation is not required. As stated by the Seventh Circuit, "the one-year limitation period begins to run even when a plaintiff is placed on 'inquiry notice' of possible misrepresentations." *De-Bruyne v. Equitable Life Assurance Soc'y,* 920 F.2d 457, 466 (7th Cir.1990). Whether an event constitutes "inquiry notice" is a question of whether "such discovery should have been made by the exercise of reasonable diligence." *Id.* As such, "the objective 'reasonable diligence' standard does not lend itself easily to summary judgment." *Id.* VALIC argues that various notices in which the banding method is ostensibly disclosed placed Otto on at least inquiry notice as of April 1, 1979. Otto counters by claiming that these notices obscured, rather than disclosed, VALIC's method of interest payment. As this court noted in our previous opinion, dated January 19, 1990, "this issue is clearly one of material fact that may not be appropriately resolved on a *motion for* summary judgment." *Otto,* 730 F.Supp. at 149. The Supreme Court's decision in *Lampf* has done nothing to alter this conclusion. If it is determined, as a matter of fact, that any or all of the class members discovered or should have discovered, by the exercise of reasonable diligence, the nondisclosure before Au-

gust 2, 1981, then the claims of those class members will be barred under *Lampf.*

## B. Petition to Intervene

In light of the above discussion, DeBoer and Dedrich's petition for leave to intervene as named plaintiffs in this class action is denied. As stated by the petitioners, the purpose of their petition is to preserve the rights of the intervenors and of the 20,000 plus class members in the event that Otto's claim is determined to be time-barred. We have concluded that Otto's claim is not barred in its entirety. Therefore, we find no reason to add additional named plaintiffs at this late date. Moreover, petitioners have made no showing that they fulfill the requirements for class representatives outlined in Federal Rule of Civil Procedure 23. Accordingly, we deny petitioner's motion to intervene.

## IV. Conclusion

For the reasons as set forth above, only those claims by class members who purchased and subsequently withdrew their interest in VALIC's fixed annuity prior to August 2, 1979, are barred by the limitations period adopted by *Lampf.* Accordingly, VALIC's motion for summary judgment is granted in part and denied in part. DeBoer and Dedrich's petition to intervene is denied. It is so ordered.

## AMENDING MEMORANDUM OPINION AND ORDER

[Dec. 18, 1991]

Presently before this court is a motion filed by defendants Variable Annuity Life Insurance Company and other affiliated companies (collectively referred to as· "VALIC"), seeking amendment of our order of November 8, 1991. Specifically, VALIC asks for clarification of our holding that "only those claims by class members who purchased and subsequently withdrew their interest in VALIC's annuity prior to August 2, 1979, are barred by the limitations period adopted by *Lampf.*" Nov. 8, 1991, Op. at 462. In addition, VALIC asks this court to correct state-

ments in our order that suggest that plaintiffs are alleging common-law fraud.

It is undisputed that the 1–and–3–year statute of repose adopted in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. at ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), bars all claimed violations of the Securities Exchange Act of 1934 that are based on violations occurring prior to August 2, 1979. VALIC's current confusion apparently stems from our conclusion that not all violations occurred prior to August 2, 1979. Indeed, we held that later reinvestments of interest constitute "purchases" capable of supporting separate and independent violations of § 10(b) and Rule 10b–5. Nov. 8, 1991, Op. at 461–62. The import of this conclusion is rudimentary. At root, our holding can be summarized as follows: (1) any Count I claim based on a purchase occurring prior to August 2, 1979, is time-barred; (2) any Count I claim based on a purchase not occurring prior to August 2, 1979, is not time-barred. Contrary to VALIC's contention, we did not hold that "subsequent (and timely) alleged violations operate[ ] to revive claims of class members which are based on *untimely* purchases." Defendants' Motion to Amend at 3 (emphasis in original). To be sure, we offer the following paradigm: To the extent that Otto's initial purchase on October 17, 1975, constitutes a violation of § 10(b) and Rule 10b–5, action on that violation is time-barred. On the other hand, to the extent that each of Otto's additional reinvestments of interest befalling on or after August 2, 1979, constitutes a violation of § 10(b) and Rule 10b–5, action on that violation is not time-barred.

VALIC is correct in noting that Otto currently does not maintain a common-law fraud claim against defendants. Although Count VI of the amended complaint initially contained a fraud claim, it was abandoned by Otto in the Final Pretrial Order filed April 2, 1991. Presently, three counts remain: (1) Count I (federal securities claims); (2) Count IV (conspiracy to violate the 1934 Securities Act); and (3) Count V (breach of contract). Accordingly, our order dated November 8, 1991, is hereby amended to so reflect. It is so ordered.

## MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

### [Dec. 4, 1992]

Pursuant to § 27A of the Securities Exchange Act of 1934, enacted on December 19, 1991, plaintiff Beverly Otto has filed a motion to reconsider our ruling dated November 8, 1991, seeking reinstatement of her claims brought under § 10(b) of the 1934 Act. In that order, this court held that "those claims by class members who purchased and subsequently withdrew their interest in [defendants'] fixed annuity prior to August 2, 1979, are barred by the three-year limitations period adopted by" [the United States Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) ]. *Otto v. Variable Annuity Life Ins. Co.* [opinion herein Nov. 8, 1991]; *see also Otto v. Variable Annuity Life Ins. Co.,* [opinion herein Dec. 18, 1991] (reiterating that reinvestments of interest constitute "purchases" capable of supporting separate and independent violations of § 10(b) and Rule 10b–5). For the reasons set forth below, we deny Otto's motion for reconsideration.

Section 27A of the 1934 Act provides:

(a) EFFECT ON PENDING CAUSES OF ACTION.—The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) EFFECT ON DISMISSED CAUSES OF ACTION.—Any private civil action implied under section 10(b) of this act that was commenced on or before June 19, 1991—(1) which was dismissed as time barred subsequent to June 19, 1991, and (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991, shall be reinstated on motion by the plaintiff not later than

60 days after the date of enactment of this section.

Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. 102–242, 105 Stat. 2387 (1991). The motivating force behind this statutory amendment was to limit the 1–and–3–year limitations period adopted in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), to prospective application. Under the amendment, this court must look to the state of Seventh Circuit law as it existed on June 19, 1991, one day prior to the decision date in both *Lampf* and *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). Ironically, as of June 19, 1991, the Seventh Circuit had already held that the 1–and–3–year limitations period of § 13, 15 U.S.C. § 77m, applies to actions brought under § 10(b) and Rule 10b–5. *Short v. Belleville Shoe Manufacturing Co.,* 908 F.2d 1385, 1389 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991); *see also Pommer v. Medtest Corp.,* 961 F.2d 620, 627 (7th Cir. 1992) ("The rule in this circuit on June 19 was the federal period ... established by *Short* in 1990."). Accordingly, whether Otto's claims must be reinstated under the new amendment turns on whether *Short* should be applied retroactively.

■ Prior to addressing the retroactivity issue, however, we pause to note that Otto's motion to reconsider has been filed approximately eleven months after the enactment of § 27A. As such, defendants argue that Otto's current motion must be denied as untimely. Pointing to § 27A(b), defendants maintain that Otto's motion should have been brought by February 18, 1992, sixty days after the date of enactment of § 27A. Whether Otto's motion is in fact overdue depends on whether subsection (b) of § 27A applies to this cause rather than subsection (a), *i.e.,* whether her claims were "dismissed" as time barred subsequent to June 19, 1991. Otto attempts to invoke subsection (a), claiming that the impact of our November 8, 1991 order was merely to "limit pending causes of action." This argument is not well taken. That this court construed each "purchase" as supporting a separate and independent cause

of action, if not clearly discernable from the November 8, 1991 ruling, was explicitly stated in our order dated December 18, 1991, at —— ("later reinvestments of interest constitute "purchases" capable of supporting separate and independent violations of § 10(b) and Rule 10b–5"). Further, that multiple causes of action were embodied in a single count does not alter the fact that those separate causes of action arising prior to August 2, 1979 were in fact "dismissed," as that term is used in § 27A(b) of the 1934 Act. Accordingly, Otto's window to file a motion to reinstate those claims dismissed as a result of our November 8, 1991 order expired on February 18, 1992 and, hence, her motion to reconsider must be denied as untimely.

■ In any event, as a substantive matter, Otto cannot prevail on her motion because *Short* applies retroactively to her claims. Recently, in *McCool v. Strata Oil Co.,* 972 F.2d 1452, 1459 (7th Cir.1992), the Seventh Circuit for the first time addressed the question of *Short's* retroactive application. The *McCool* court found that "the controlling precedent on June 19, 1991 was *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)," noting that "*Chevron Oil* requires a case-by-case balancing of three factors to decide whether a new rule will be applied to the parties before the court." *McCool,* 972 F.2d at 1459. In essence, the *Chevron Oil* balancing test requires retroactive application of new statutes of limitation unless "the plaintiff can demonstrate reliance on the old limitations period." *Id.* As this court explained in *Lewis v. Hermann,* 1992 WL 57939, at *1, 1992 U.S. Dist. LEXIS 3547, at *3 (N.D.Ill. Mar. 19, 1992):

> [T]he issue of reliance arises as an exception to retroactive application in those rare cases where "a plaintiff learned of a claim within the three-year period, but, relying on existing law providing for a longer limitations period, elected to wait until after the three-year period before filing suit."

There is no dispute that Otto did not elect to belatedly file suit in reliance on the Illinois blue-sky statute. Indeed, Otto concedes that, under this court's interpretation of *Chevron Oil, Short* must be applied retroac-

tively. Otto, however, attempts to circumvent this result by urging the court to blindly adopt the "law of the case" as it existed in January of 1990. Otto reasons that because defendants' previously did not assert *Short* as a bar to plaintiff's claims, defendants are estopped from now relying on the three-year limitation period and are bound by our pre-*Short* ruling, dated January 19, 1990. We disagree. Section 27A requires this court to determine the state of the law applicable in this jurisdiction on June 19, 1991, "including principles of retroactivity." This analysis, mandated by statute, is unyielding. Otto cannot at once embrace the statute in attempt to avoid the three-year limitations period and, at the same time, disavow its impact based on ill-conceived notions of estoppel.

At root, Otto has failed to establish reliance in any form. Accordingly, we will apply *Short* retroactively to the instant case, and Otto's motion to reconsider is denied.

It is so ordered.